UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

OLUSOLA OLABODE                                         PLAINTIFF

VS.                              CIVIL ACTION NO. 3:14CV642TSL-RHW

TOUGALOO COLLEGE                                        DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This Title VII discrimination suit cause is before the court
on the motion of defendant Tougaloo College for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.
Plaintiff Olusola Olabode has responded to the motion and the
court, having considered the memoranda of authorities, together
with attachments, submitted by the parties, concludes that the
motion is well taken and should be granted.

In this case, plaintiff Olusola Olabode asserts a cause of
action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e
*et seq.*, alleging he was discriminated against in the terms and
conditions of his employment at Tougaloo College on account of his
national origin, Nigerian.  In particular, the complaint charges
that Olabode was paid significantly less than the average pay for
full professors at Tougaloo based on his Nigerian origin and that,
unlike his coworkers who are not of Nigerian descent, he was asked
to travel to Africa at his own expense to recruit students for

Tougaloo.[1]  In addition to his Title VII claim, Olabode asserts a state law claim for breach of contract, contending he was terminated in violation of the terms of his contract and the Tougaloo Faculty Handbook.

Title VII makes it unlawful for employers to discriminate "on the basis of race, color, religion, sex or national origin." Nasti v. CIBA Specialty Chems Corp., 492 F.3d 589, 593 (5th Cir. 2007) (quoting 42 U.S.C. § 20003-2(a)(1)).  Because there is no direct evidence of discrimination and the plaintiff seeks to prove his case through circumstantial evidence, the court's analysis proceeds under the burden-shifting framework delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See Refaei v. McHugh, – Fed. App'x –, 2015 WL 3622966, at *3 (5th Cir. 2015).  "Under that framework, the plaintiff must first establish a *prima facie* case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other

---

[1]    As Tougaloo notes in its motion, while plaintiff alleges a state law claim for breach of contract in connection with his termination, plaintiff does not allege that his employment at Tougaloo was terminated on account of his national origin or that his termination otherwise violated federal law.

similarly situated employees outside the protected group." <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).  "If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory ... reason for its employment action." <u>Id.</u> at 557.  "[I]f the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory ... purpose." <u>Id.</u>

To establish his *prima facie* case of discrimination on the basis of national origin, Olabode must show that "'he was treated less favorably because of his membership in [his] protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.'" <u>Refaei</u>, 2015 WL 3622966, at *3 (quoting <u>Lee v. Kansas City S. Ry. Co.</u>, 574 F.3d 253, 259 (5th Cir. 2009)).  "Making that showing requires that [Olabode] provide evidence of sufficient 'comparators'." <u>Id.</u>  (citing <u>Lee</u>).

In its motion for summary judgment, Tougaloo asserts that while Olabode's base salary of $37,483 may have been less than other professors, Olabode, unlike other professors, lived on the Tougaloo campus for many years without charge for room and board.[2]

_____

[2]    Tougaloo has presented uncontroverted evidence that Olabode has lived on campus at no charge since 2007 and for the

It contends that Olabode cannot establish a *prima facie* case of discriminatory compensation because he has no evidence that any tenured non-Nigerian professor at Tougaloo was paid more than he, even though they received comparable housing at no charge.  In response to the motion, plaintiff has submitted an affidavit in which he states, without explication or elaboration, that he was paid "significantly less that [sic] other similarly situated non African/Nigerian tenured faculty members such as Richard McGinnis, Loye Ashton[,] Mary Davis [and James Stewart] who all lived in faculty housing and were not paying rent."  However, Tougaloo has asked the court to strike this part of Olabode's affidavit on the basis that it is inconsistent with his prior deposition testimony and/or is otherwise hearsay and thus cannot serve as competent summary judgment evidence.  See Fed. R. Civ. P. 54(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); McWhirter v. AAA Life Ins. Co., – Fed. App'x –, 2015 WL 4720323, at *2 (5th Cir. 2015) (statement in affidavit based on belief rather than personal knowledge "is not valid summary-judgment evidence"); Jefferson v. MillerCoors, L.L.C., 440 Fed. App'x 326, 331 (5th Cir. 2011)

---

preceding years, he paid only $150 per month for rent and utilities.

(supporting affidavits were not competent summary judgment evidence because they were conclusory, made without personal knowledge, and contained hearsay).  In the court's opinion, the request to strike is well taken.[3]

In his deposition, Olabode initially indicated that Mary Davis was "put on the same scale" as he with regard to the payment (or nonpayment) of rent, but he then admitted he did "not know what she was paying at Tougaloo."  When asked if he had any personal knowledge about how long she had lived on Tougaloo's campus and what amount of rent she had paid to live there, he stated, "I would not know that since I don't delve into her personal confidential things other than what – every other thing will be an assumption."  He similarly testified he had no personal knowledge whether Richard McGinnis or any other faculty member paid rent to live on the Tougaloo campus.  In response to Tougaloo's motion to strike, Olabude explains that following his deposition (which was taken in May 2015), he "was able to further reflect on the questions asked, review documentation in his possession and converse with other individuals who were employed with Defendant during [his] employment with Defendant" and as a result, "was able to present a more complete and accurate picture

_____

[3]     Plaintiff was given and availed himself of the opportunity to file a supplemental response to address the request to strike.

in his Affidavit after having the opportunity to further reflect, review his documentation further and speak with other individuals to confirm the facts set forth in his Affidavit." He claims he "simply clarified his previous answers to questions in his deposition to which he either did not have sufficient recall abilities to answer at the time or simply responded that he did not know."

In fact, Olabode did not testify in his deposition that he "did not know" or that he could not recall what others paid or did not pay to live on the Tougaloo campus. Rather, he plainly stated he had *no personal knowledge* of these matters. In the case of Mary Davis, in particular, he stated he never asked her about these matters and that he did not know but merely assumed she paid nothing (or rent comparable to that charged him) to live on campus. His affidavit cannot be legitimately characterized as merely providing clarification of these matters. Moreover, in view of plaintiff's deposition testimony that he had no personal knowledge of what, if anything, others paid in rent – and apparently no basis for having acquired any such personal knowledge – the present assertion that he has somehow acquired personal knowledge of these matters based upon "further reflection" is nonsensical. He does also state that he has "reviewed his documentation" and "[spoken] with other individuals to confirm the facts set forth in his Affidavit." Yet he does not

6

identify or provide such alleged documentation.  And he does not
identify any of the individuals to whom he allegedly spoke or
explain how they were able to confirm the statements in his
affidavit.  What McGinnis, Ashton, Davis and/or Stewart may have
told him regarding their salaries and what they did not pay in
rent is clearly hearsay.  For these reasons, Olabode's statement
in his affidavit that McGinnis, Ashton, Davis and Stewart lived in
faculty housing rent-free will be stricken in accordance with Rule
54(c)(4).  It follows that plaintiff has not presented competent
comparator evidence to satisfy his *prima facie* case of wage
discrimination based on his national origin.

Tougaloo has also moved for summary judgment as to Olabode's
claim that he was discriminated against on account of his national
origin by being asked to travel to Nigeria at his own expense to
recruit students to Tougaloo, something he alleges his non-
Nigerian coworkers were not asked to do.  Tougaloo submits that
plaintiff cannot succeed on this claim, as he cannot prove he was
ever required by Tougaloo to travel abroad at his own expense and
he has no comparators on which to base this claim.  Indeed,
Olabode has failed to identify any trip to Nigeria that he
actually claims supports this allegation, and furthermore, he
admitted in his deposition he has no personal knowledge of whether
Tougaloo has ever asked other professors to visit their home

7

countries to recruit students to Tougaloo.[4]  Summary judgment is
therefore in order on this claim, as well.

In addition to his Title VII claim, Olabode has asserted a
state law claim for breach of contract based on allegations that
(1) he was not dismissed for "'unethical or unprofessional
conduct' as is required by the [Tougaloo Faculty] Handbook," the
provisions of which are incorporated in his employment contract
with Tougaloo, and that (2) "procedures were not followed and that
he was deprived of income from May 31, 2013 to the present" in
violation of his employment contract.[5]  Tougaloo contends summary

_____

[4]     Notably, plaintiff's response does not address
Tougaloo's motion with respect to this claim.

[5]     As a result of the court's granting summary judgment on
Olabode's Title VII claim, his only remaining claim is for breach
of contract under state law.  Pursuant to 28 U.S.C. § 1367(c)(3),
a district court may decline to exercise supplemental jurisdiction
if "the district court has dismissed all claims over which it has
original jurisdiction."  While the Fifth Circuit has held that
"[t]he general rule is that a court should decline to exercise
jurisdiction over remaining state-law claims when all federal-law
claims are eliminated before trial," Brookshire Bros. Holding,
Inc. v. Dayco Prods., Inc., 554 F.3d 595, 602 (5th Cir. 2009),
"this rule is neither mandatory nor absolute," id., and
"[d]istrict courts enjoy wide discretion in determining whether to
retain supplemental jurisdiction over a state claim once all
federal claims are dismissed," Noble v. White, 996 F.2d 797, 799
(5th Cir. 1993).  Here, Olabode's state law claim does not raise
any novel or complex issues of state law.  Moreover, this case has
been pending in federal court for more than a  year, discovery is
closed, and under the case management order, the case is set to
commence trial at the court's November trial term, just two months
from now.  Accordingly, the court will exercise supplemental
jurisdiction over the pending state law claims in this matter, as
it would constitute a waste of judicial resources to decline to
exercise such jurisdiction.

judgment is in order as Tougaloo did not violate its employment contract with Olabode for the 2012-2013 academic year and, alternatively, because any alleged contractual breach was immaterial and did not cause Olabode damages.

On May 16, 2013, Tougaloo President Beverly Hogan wrote a letter to Olabode advising him that she was recommending to Tougaloo's Board of Trustees that he be dismissed from his employment with Tougaloo, effective May 31, 2013. The letter did not state the basis for her recommendation, either generally or specifically. The letter did notify Olabode of his right to appeal Hogan's decision and stated that if he chose to appeal, he was required to so notify her no later than May 28, 2013. On May 22, 2013, Olabode's attorney, Matthew Wilson, informed President Hogan by letter that Olabode was exercising his right to appeal. Thereafter, on August 30, 2013, Olabode received a letter from Tougaloo's Human Resources Department which stated that Tougaloo's records showed his employment had been terminated on May 31, 2013. Attorney Wilson responded by letter on September 9, 2013 that he and his client Olabode found this correspondence troubling, as Olabode had timely and clearly informed President Hogan that he was exercising his right to appeal her recommendation of dismissal, so that Tougaloo's attempt to terminate him effective May 31, 2013 was a material breach of his contract of employment. Tougaloo's counsel responded, asserting that he had not been

informed as to whether Olabode actually wanted to go through with a dismissal hearing.  He stated that he would need to be informed no later than November 6, 2013 as to whether Olabode would appeal his "recommended termination," and counsel further advised that if Olabode desired to appeal, the procedure set forth in the Handbook would be followed and a hearing timely convened.  Counsel wrote, "Should Dr. Olabode choose to move forward with a hearing, the final decision will determine his employment status and the benefits thereof."

Thereafter, on November 21, 2013, Tougaloo Provost Bettye Parker Smith scheduled a preliminary meeting of the Faculty Dismissal Hearing Panel (Panel) for December 3, 2013 to "begin the process of review as articulated in the Handbook."  Thereafter, by letter dated April 25, 2014, counsel for Tougaloo notified Olabode of the charges that Tougaloo contended supported his termination and advised that a termination hearing had been scheduled for April 29, 2014.  Following that hearing, which was ultimately held on May 6, 2014, the Panel unanimously concluded that the charge against Olabode, "failure to meet the contractual duties of a faculty member as defined in the Tougaloo College Faculty Handbook," was substantiated, and recommended that Olabode's academic rank with tenure be rescinded and that his appointment status be changed to Research Fellow.  President Hogan transmitted the Panel's findings and recommendation to the Board of Trustees,

along with her own recommendation that Olabode's termination be upheld.  President Hogan advised Tougaloo's counsel by letter dated June 12, 2014 that the Board of Trustees had met on June 5, 2014 and approved her recommendation to uphold the termination of Olabode's employment.

Olabode alleges in his complaint that he was not terminated for "unethical or unprofessional conduct" as required by the Faculty Handbook for the termination of one holding the rank of tenured professor.  He additionally alleges that he was terminated on June 5, 2014, and that Tougaloo's failure to compensate him from May 31, 2013 through June 5, 2014, even though he was still employed, was a material breach of his employment contract.  In its motion, Tougaloo contends, and has presented ample evidence to support its contention that Tougaloo had a legitimate basis under the terms of Olabode's contract for his termination.  Olabode's contract provides, in pertinent part, that Olabode "may be terminated for reasons of incompetency, not adapting to assigned work, not functioning as a wholesome and cooperative part of the life and work of Tougaloo College, or a declaration of financial exigency by the College."  The evidence shows that from the start of the Spring 2013 term, Olabode failed for several days to show up to teach his classes, without communicating with Tougaloo to explain the reason for his absence, and thereby put Tougaloo in the position of having to hire an adjunct professor to teach his

11

classes that semester.  Olabode thereafter failed and/or refused

to perform an assigned research project.  In his response, Olabode

does not undertake to challenge this proof or Tougaloo's motion on

this aspect of his breach of contract claim.  Instead, he focuses

solely on his allegation that under the terms of his contract, he

was entitled to be paid from May 31, 2013 to the date of his

termination by the Board of Trustees on June 4, 2014.

Olabode points out that under the Faculty Handbook,

> A faculty member will be suspended during dismissal
> proceedings only if the President of the College judges
> that the faculty member's continued performance of
> duties would constitute a danger to the faculty member
> or to others at the College.  If a faculty member is
> suspended during dismissal proceedings, the suspension
> shall be with pay unless the faculty member is legally
> prevented from discharging his or her duties by a party
> other than the College itself.

He contends that since he was not and has not been shown to be a

danger to faculty members or others at Tougaloo or to have been

legally prevented from discharging his duties to Tougaloo while

his dismissal proceedings were proceeding, then he was entitled to

be paid until the date of his termination by the Board of

Trustees, June 5, 2014.  Tougaloo contends it is entitled to

summary judgment on this claim since the suspension provision

relied upon by Olabode only affords *suspended* employees a right to

compensation during their dismissal proceedings; it does not

provide *terminated* employees a right to compensation after their

termination has become effective, i.e., while they appeal that

12

decision.  According to Tougaloo, the undisputed facts show that Olabode was terminated, not suspended, on May 31, 2013, and therefore, his claim for breach of contract fails as a matter of law.  The court is not persuaded that summary judgment is in order.

The Tougaloo Faculty Handbook clearly states: "A tenured faculty member may be dismissed only by action of the Board of Trustees pursuant to the procedures mandated by the College." Thus, President Hogan could not terminate Olabode.  She could only recommend his termination, following which formal dismissal proceedings would follow if Olabode chose to appeal her decision, which he clearly did.  Again, the Faculty Handbook states that a faculty member will be suspended during such dismissal proceedings "only if the President of the college judges that the faculty member's continued performance of duties would constitute a danger to the faculty member or to others at the College"; and even when a faculty member is suspended during dismissal proceedings, he is entitled to be paid unless he is legally prevented from discharging his duties.  In light of these provisions, the court cannot conclude that Tougaloo is entitled to summary judgment on this claim.[6]

---

[6]    The court recognizes that when asked in his deposition what date he was terminated, Olabode responded, "May 31, 2013." However, in view of the Handbook provisions, the court still concludes that summary judgment for Tougaloo would not be proper.

13

Accordingly, based on the foregoing, it is ordered that the motion of defendant Tougaloo College is granted as to plaintiff Olabode's Title VII claims for discrimination and as to his claim for breach of contract relating to the reason for his termination. However, the motion is denied as to his claim for breach of contract based on Tougaloo's failure to compensate him from May 31, 2013 to June 5, 2014.

SO ORDERED this 8th day of September, 2015.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

14